IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **AML IP, LLC,** *Plaintiff*, <br><br> v. <br><br> **J. C. PENNEY CORPORATION INC.,** *Defendant*. | 6:21-cv-00522-ADA |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS [ECF No. 17]**

Came on for consideration this date is Defendant Penney OpCo LLC's Motion to Dismiss for Improper Venue and Failure to State a Claim, filed August 10, 2021. ECF No. 17 (the "Motion"). Plaintiff AML IP, LLC ("AML") filed an opposition on September 23, 2021, ECF No. 23, to which Penney OpCo LLC ("Penney OpCo" or "Defendant") replied on October 14, 2021, ECF No. 27. After careful consideration of the Motion, the parties' briefs, and the applicable law, the Court **DENIES** Penney OpCo's Motion to Dismiss.

## I. BACKGROUND

On May 24, 2021, AML sued J. C. Penney for patent infringement. ECF No. 1 (the "Complaint") at 1. On June 1, 2021, AML filed an amended complaint, replacing J. C. Penney with Penney OpCo LLC. *See* ECF No. 6 (the "FAC"). The FAC alleges that Penney OpCo, doing business as "JCPenney," infringes U.S. Patent No. 6,876,979 (the "'979 patent" or "the Asserted Patent"), which recites claims directed to a method "for conducting electronic commerce." ECF No. 6 ¶ 8.

The background of the '979 patent describes the state of the prior art, in which "[s]ervice providers associated with Internet portal sites" allow users to establish a single account that the user can use to "shop at multiple vendors without having to establish" an account for each vendor.

1

'979 patent, 1:9–20. A similar problem nevertheless persisted: because there were multiple service providers, users had to register a user account with each service provider. *Id.* at 1:21–27. The object of the invention described in the '979 patent was to "provide e-commerce systems that allow users to shop at vendors associated with different service providers without having to establish multiple service provider accounts." *Id.* at 1:28–31. And, according to the '979 patent, it achieves that through use of a "bridge computer," to which "service providers may register," and that "may act as a clearinghouse for transactions, so that rival service providers need not interact directly with one another." *Id.* at 1:47–50, 6:36–37.

Penney OpCo allegedly infringes the Asserted Patent by using a bridge computer implementing the claimed invention to facilitate purchases from vendors. ECF No. 6 ¶ 9. The FAC seems to lay out the rough contours of AML's direct infringement theory for claim 1 of the '979 patent. Claim 1 reads:

> 1. A method for using an electronic commerce system having a bridge computer to allow a user at a user device to make a product purchase at a purchase price from a given vendor having a web site provided by a vendor computer over a communications network, wherein the vendor is associated with at least one of a plurality of service providers wherein each of the plurality of service providers has a service provider computer, and wherein the user has a user account maintained by at least one of the plurality of service providers, the method comprising:
>
> debiting the user's account by the purchase price when the user purchases the product from the given vendor;
>
> determining from among the plurality of service providers, using the bridge computer, whether the given vendor is associated with the same service provider with which the user's account is maintained or is associated with a different service provider; and
>
> if the service provider with which the user's account is maintained is the same as the service provider with which the vendor is associated, crediting the given vendor by the purchase price using funds from the user's account at that same service provider and, if the service provider with which the user's account is maintained is

> different from the service provider with which the vendor is associated, crediting the given vendor by the purchase price using funds from the service provider with which the vendor is associated and using the bridge computer to reimburse that service provider with the purchase price using funds from the user's account.

'979 patent, 10:24–54.

The FAC alleges that Penney OpCo "maintains, operates, and administers payment products and services that facilitate purchases from a vendor using a bridge computer that infringes one or more claims of the '979 patent." ECF No. 6 ¶ 9. The FAC claims that, in taking the following steps, Defendant infringes claim 1:

- "provid[ing] a web site for electronic commerce that allows a user to make a product purchase,"
- acting as a "service provider that uses a computer to manage a user account,"
- "debit[ing] the user account when the user purchases a product," and
- seemingly permitting a user to pay with either a credit card or PayPal.

ECF No. 6 ¶ 10. As evidence of this conduct, the FAC relies only on screenshots AML apparently pulled from jcpenney.com. *See id.* The FAC also, briefly, accuses Defendant of induced and contributory infringement. *Id.* ¶¶ 11, 12.

Penney OpCo takes issue with the sufficiency of these allegations and moves to dismiss this Action under Rule 12(b)(3) for improper venue and Rule 12(b)(6) for failure to state a claim. ECF No. 17 at 2.

## II. LEGAL STANDARD

### A. Motion to Dismiss: Improper Venue

A case claiming patent infringement may be brought in the judicial district where the defendant (1) resides or (2) has committed acts of infringement and has a regular and established

place of business. 28 U.S.C. § 1400(b). A case that is brought in an improper venue may be dismissed. Fed. R. Civ. P. 12(b)(3). Whether venue is proper under 28 U.S.C. § 1400(b) is an issue unique to patent law and thus governed by Federal Circuit Precedent. *In re: ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018) (citation omitted).

When venue is challenged, the plaintiff bears the burden to show venue is proper. *Id*. at 1013. If a defendant does not reside in a district, the plaintiff may meet its burden by showing that (1) there is a physical place in the district at issue; (2) that place is a regular and established place of business; and (3) it is the defendant's place. *Id*. at 1014. To be a regular and established place of business, the alleged 'place of business' must be a place where the defendant's employees or agents are regularly, physically, present and conduct the defendant's business. *In re Google LLC,* 949 F.3d 1338, 1345 (Fed. Cir. 2020).

Showing these elements, combined with an allegation that infringement occurred in the district at issue, can establish venue and allow a case to survive a motion to dismiss. *In re ZTE (USA) Inc.*, 890 F.3d at 1014; *see TMT Systems, Inc. v. Medtronic, Inc.*, 6:20-CV-0973-ADA, 2021 WL 5316411, at *2 (W.D. Tex. Oct. 19, 2021) (holding that a simple allegation of infringement, even if the defendant denies the allegation, is sufficient to establish venue). When evaluating these elements, a court should keep in mind that the patent venue statute should be read narrowly. *In re ZTE (USA) Inc.*, 890 F.3d at 1014. During its venue evaluation, the court must accept all the plaintiff's allegations as true and resolve all conflicts in the plaintiff's favor. *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F.App'x 612, 615 (5th Cir. 2007) (per curiam). If the court finds venue is improper, it may either dismiss the case or transfer it to a proper district. 28 U.S.C. § 1406(a).

    B.  **Motion to Dismiss: Failure to State a Claim: Patent Eligibility**

A party may move to dismiss a claim if the complaint has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 663. When considering a Rule 12(b)(6) motion, a court must assume that all well-pled facts are true and view them in the light most favorable to the non-moving party. *See Bowlby v. City of Aberdeen*, 681 F.3d 215, 218 (5th Cir. 2012). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. at 678.

   1. **The *Alice* Test**

Patentability, as described in 35 U.S.C. § 101, is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Therefore, the section 101 inquiry may be properly raised in a motion to dismiss if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring).

Courts apply a two-part test to determine whether a patent is directed to eligible subject-matter. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014). First, a court must determine whether the claims at issue are "directed to a patent-ineligible concept." *Id.* at 217. Laws of nature, natural phenomena, and abstract ideas are not patentable. *Id.* at 216. If the claims are directed to a patent-ineligible concept, a court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements

'transform the nature of the claim' into a patent-eligible application." *Id.* at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 566 U.S. 66, 78–79 (2012)). Step two of the analysis is "a search for an 'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217–18 (quoting *Mayo*, 566 U.S. at 72–73) (brackets omitted)). Step two is satisfied "when the claim limitations involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018).

### 2. The Presumption of Validity

Patents granted by the United States Patent and Trademark Office are presumptively valid. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100 (2011) (citing 35 U.S.C. § 282). "This presumption reflects the fact that the Patent and Trademark Office has already examined whether the patent satisfies 'the prerequisites for issuance of a patent,' including § 101." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) (quoting *Microsoft*, 564 U.S. at 95–96). Accordingly, the presumption of validity extends to patent eligible subject-matter. *Id*.

This presumption of validity complicates a court's § 101 eligibility analysis inevaluating a Rule 12(b) motion to dismiss. Generally, overcoming the presumption of validity requires clear and convincing evidence. *Microsoft*, 564 U.S. at 95. In the context of § 101 eligibility, the Federal Circuit has held that the second part of *Alice*'s two-step inquiry should be assessed according to the clear and convincing evidence standard. *Berkheimer*, 881 F.3d at 1368 ("Any fact, such as [whether a claim element or combination is well-understood or routine], that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence.").

When analyzing a motion to dismiss, a court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the [patentee's] favor." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). Therefore, during step two of the *Alice* analysis, after accepting all of the complaint's factual allegations as true and drawing all reasonable inferences in the patentee's favor, a court must determine whether there is clear and convincing evidence that the claim limitations are merely "well-understood, routine, [and] conventional activities previously known to the industry." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). In other words, to prevail, the movant needs to overcome both a factual deck stacked against it and a heightened burden of proof.

Therefore, because a patent is presumed valid and requires clear and convincing evidence to prove its invalidity, a Rule 12(b) motion to dismiss is a procedurally awkward place for a court resolve a patent's § 101 eligibility.

### 3. Claim Construction

Another factor that can affect a court's § 101 analysis is claim *construction. See, e.g.*, *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373 (Fed. Cir. 2019). Claim construction is not an inviolable prerequisite to determining patent validity. *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1349 (Fed. Cir. 2014). But the Federal Circuit has instructed that "[d]etermining patent eligibility requires a full understanding of the basic character of the claimed subject matter." *MyMail*, 934 F.3d at 1379 (citing *Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012) ("[I]t will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter."). Further, claim construction can itself affect a § 101 analysis. *See, e.g.*,

*Aatrix Software*, 882 F.3d at 1128–30 (vacating the district court's Rule 12(b)(6) dismissal and ordering the district court to "resolve, as necessary, claim construction issues" on remand); *Dynamic Applet Techs., LLC v. Mattress Firm, Inc.*, No. 4:17-CV-860-ALM-KPJ, 2018 WL 5306647, at *6–7 (E.D. Tex. Aug. 29, 2018), report and recommendation adopted, No. 4:17-CV-860-ALM-KPJ, 2018 WL 4456820 (E.D. Tex. Sept. 18, 2018) ("In order for the Court to determine whether the patents contain an inventive concept, it is necessary for there to be a settled interpretation of the claim language.").

Therefore, because claim construction can affect—and in most cases, will affect—a court's § 101 eligibility analysis, the Court believes that it is generally wiser and more efficient to wait to determine a patent's § 101 eligibility until after issuing its claim construction order.

### 4. Fact discovery

Insufficient discovery can also affect a court's validity analysis because "whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Berkheimer*, 881 F.3d at 1369. Thus, like claim construction, fact discovery can affect a § 101 analysis. *See, e.g.*, *Cronos Techs., LLC v. Expedia, Inc.*, No. 13-1538-LPS, 2015 WL 5234040, at *3 (D. Del. Sept. 8, 2015) (denying without prejudice motion for judgment on the pleadings of ineligibility of claims generally disclosing methods and systems for remote ordering of products).

Therefore, resolving § 101 eligibility of all asserted claims almost certainly requires fact discovery. And because fact discovery does not begin until after claim construction under the Court's default Order Governing Proceedings, the Court generally believes it is wiser and more efficient to wait to determine a patent's § 101 eligibility until after fact discovery has at least opened.

### 5. The difficulty of applying the *Alice* test

The *Alice* test is a difficult test to apply and yields inconsistent results. This lack of predictability and consistency is widely known and extremely problematic. These inherent problems come into play when an abstract idea is potentially involved. As Judge Linn explained in 2017:

> The narrow character of the law of nature and natural phenomenon exceptions is relatively self-evident, but the contours of the abstract idea exception are not easily defined. For that reason, the abstract idea exception is almost impossible to apply consistently and coherently. . . . The problem with [the *Alice*] test, however, is that it is indeterminate and often leads to arbitrary results. Moreover, if applied in a legal vacuum divorced from its genesis and treated differently from the other two exceptions, it can strike down claims covering meritorious inventions not because they attempt to appropriate a basic building block of scientific or technological work, but simply because they seemingly fail the Supreme Court's test.

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1377 (Fed. Cir. 2017) (Linn, J., dissenting-in-part and concurring-in-part). The courts have been reduced to an "I know it when I see it" style of analysis. *McRo, Inc. v. Sony Comput. Ent. Am., LLC*, 55 F. Supp. 3d 1214, 1220 (C.D. Cal. 2014), *rev'd and remanded*, 837 F.3d 1299 (Fed. Cir. 2016) (quoting *Jacobellis v. State of Ohio*, 378 U.S. 184, 197 (1964)). Unsurprisingly, given this lack of guidance, courts have struggled to determine what qualifies as an abstract idea and need as much assistance as possible.

Even what seem like small technical details could loom large in the final eligibility analysis because there is often only a very thin line between a patent that is directed at an abstract idea and a patent that is directed to improving, for example, a computer program or system. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016). By delaying the § 101 determination, a court can spend more time with the patents during claim construction, motions to strike contentions, discovery disputes, and even motions for summary judgment.

.

## III. ANALYSIS

### A. Venue is Proper as to Penney OpCo

Section 1400(b) provides two avenues for establishing venue. Venue is proper where the defendant resides, and a domestic corporation "resides" only in its state of incorporation. *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1521 (2017). There is no dispute that Penney OpCo is incorporated in Virginia and therefore does not reside in this District. *See* ECF No. 6 ¶ 2; ECF No. 17 at 3.

Alternatively, venue is proper where the defendant has (a) committed acts of infringement; *and* (b) has a regular and established place of business. 28 U.S.C. § 1400(b). Penney OpCo does not deny that it has retail stores constituting regular and established places of business in this District. *See* ECF No. 17 at 9–10. Rather, it alleges that it does not commit the actions AML alleges to be infringing in this District. *See id.* On this point, the FAC includes only a bare allegation and *no* supporting factual allegations specific to this District. ECF No. 6 ¶ 6 ("Defendant has committed acts of infringement . . . in this District.").

In the main, Penney OpCo argues that AML has failed to allege that steps recited in the Asserted Patent's method claims occur in this District. ECF No. 17 at 10–11. Penney OpCo states that the FAC's allegations "are directed at third-party checkout services and their alleged interaction with www.jcpenney.com." ECF No. 17 at 4. And it contends that, because jcpenney.com's "Payment System processing" is operated from servers outside of Texas, Penney OpCo cannot have committed any infringement within this District. ECF No. 17

In support, Defendant submitted an affidavit from Kingsuk Chakrabarty, Director for Payments and Stores Point-of-Sale in the Technology Department for Penney OpCo. ECF No. 17-1 (the "Chakrabarty Declaration"). Mr. Chakrabarty testified that Defendant's payment system processing "is operated from servers at data centers located in Lenexa, Kansas and Columbus,

Ohio." *Id.* ¶ 8; ECF No. 17 at 11. He also testified that payments made on jcpenney.com are hosted on Amazon Web Services servers provisioned for on the East Coast, likely Northern Virginia. *See* ECF No. 17-1 ¶ 10; ECF No. 17 at 4. Finally, he attested that Penney OpCo does not "own, operate, lease, or control any data centers for the accused website or databases in this District." ECF No. 17 at 11 (citing ECF No. 17-1 ¶ 8).

AML's opposition only criticizes Penney OpCo's motion; it does not furnish evidence to supplement its barebones allegations. AML simply takes issue with Penney OpCo's reliance on *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1317–18 (Fed. Cir. 2005). The Motion cites *NTP* for the contention that, to directly infringe a method claim within a "place," each of the claimed steps must be performed within "that place." ECF No. 17 at 10 (citing *NTP*, 418 F.3d at 1317–18). AML clarifies that the *NTP* opinion involved concerns about the extraterritorial application of U.S. patent law. ECF No. 23 at 3. ("[T]he *NTP* case merely stands for the proposition that a method claim cannot be infringed when some of the steps are performed outside of the United States."). The Court thought AML meant to suggest that *NTP* is inapposite because it does not discuss where a defendant commits an act of infringement for purposes of § 1400(b). That would be a cogent point. But AML concludes by bluntly remarking that a "method claim is directly infringed when someone practices the patented invention" without any accompanying explanation as to *how* Penney OpCo was practicing the patented invention *in this District.* AML's briefing does not inspire confidence that AML understood Penney OpCo's point. *See* ECF No. 27 at 2–3 (noting the same). To be clear, Defendant's Motion does not argue that its accused conduct is not infringing—it argues that it never committed the accused conduct in this District.

AML's case is saved, however, by a procedural posture that resolves all reasonable disputes in the non-movant's favor. The Court concludes, as it did in *AML IP, LLC v. Bed Bath & Beyond,*

11

*Inc.*, No. 6:21-CV-00600-ADA, 2022 WL 1085617, at *5 (W.D. Tex. Apr. 11, 2022), that AML has met its burden in establishing venue. Penney OpCo's reply seems to recognize that, so long as the complaint alleges that the defendant commits one method step in this District, Plaintiff has met its burden. ECF No. 27 at 3.[1] Defendant contends that AML cannot establish that it commits even one step recited in independent claim 1, or any of the dependent claims, in this District. ECF No. 27 at 3. The Court disagrees. For example, dependent claim 7 recites the step of "using the bridge computer to provide the user at the user device with a screen that includes a buy option when the user selects an on-screen option." '979 patent, 11:5–10. This step requires conduct extending beyond the bounds of Penney OpCo's Kansas-based servers to "users" that, as the FAC suggests, sit in this District. Given that, the Court cannot hold that Penney OpCo is committing the "provid[ing]" step in Kansas and Kansas alone. Or at least it won't hold that at this stage of the proceedings. *See Castaneda*, 2021 WL 1390423, at *1 ("On a Rule 12(b)(3) motion to dismiss for improper venue, the court must . . . resolve all conflicts in favor of the plaintiff."). This step could be said to occur in this District. Because the FAC alleges that Defendant commits acts of infringement in this District and infringes claim 7, ECF No. 6 ¶¶ 6, 9, the Court is satisfied that AML's FAC has sufficiently alleged that Defendant commits claimed steps, like the providing step, in this District where some of its users (that is, customers) sit. That suffices to establish venue.

Penney OpCo's Motion is one of a growing number challenging venue under § 1400(b)'s traditionally less contentious "acts of infringement" prong. This Motion is distinct from two recent decisions dismissing a defendant under this prong. In *EMA Electromechanics, Inc. v. Siemens*

---

[1] That is consistent with the holding in *Seven Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 945 (E.D. Tex. 2018). *See also Precis Grp., LLC v. TracFone Wireless, Inc.*, No. 6-20-CV-00303-ADA, 2021 WL 932046, at *9 (W.D. Tex. Mar. 11, 2021), *vacated on other grounds*, *In re TracFone Wireless, Inc.*, 852 F. App'x 537 (Fed. Cir. 2021) (following *Seven Networks*).

*Corp.*, the Court dismissed a co-defendant, Siemens Corporation, that controverted allegations it committed acts of infringement in this District by submitting a declaration stating the following: (a) its subsidiary, Siemens Industry, performed all the accused conduct; and (b) it did not commit *any* of the accused conduct, in this District or elsewhere. No. 6:21-cv-1001-ADA, 2022 U.S. Dist. LEXIS 76297, at *15 (W.D. Tex. Feb. 4, 2022). Likewise, in *Sightline Payments, LLC v. Everi Holdings Inc.*, the Court dismissed one co-defendant, Everi Games, that controverted allegations it committed acts of infringement in this District where: (a) its affiliate co-defendant, Everi Payments, submitted an affidavit attesting that Everi Payments was the only entity selling the accused product; and (b) the plaintiff eventually conceded that Everi Games only committed acts of infringement in this District under an alter-ego theory. No. 6:21-CV-01015-ADA, 2022 U.S. Dist. LEXIS 103059, *23 & n.6 (W.D. Tex. June 1, 2022). This case diverges from *EMA* and *Sightline* in that Defendant has not proffered a declaration completely disclaiming responsibility for the accused conduct and attributing it to another. The Chakrabarty Declaration certainly does not represent that Defendant does not offer jcpenney.com to residents of this District. Rather, it merely indicates where relevant servers sit. *See* ECF No. 17-1 ¶¶ 7–10. In that way, it attempts to support Penney OpCo's theory that the location of the servers is the location of infringement. The Court is not averse to such a theory but, as explained above, finds it too poor a fit to excuse Penney OpCo from having to defend suit here.

Penney OpCo's motion to dismiss for improper venue is **DENIED**.

  **B.**  **Resolution of the § 101 Issue Is Improper at this Stage**

Penney OpCo argues that AML has not alleged a plausible infringement claim because the Asserted Patent's claims are ineligible under 35 U.S.C. § 101. ECF No. 17 at 12, 17. According to Penney OpCo, claim 1 of the Asserted Patent is an abstract idea that does not contain an inventive concept and is thus unpatentable under the *Alice* test. *Id.* at 12. Penney OpCo also asserts that

13

Claim 1 of the Asserted Patent is merely directed to the abstract idea of "facilitating economic transactions between two parties using a third-party intermediary," and compares the bridging computer to a "clearing house," a well-established economic practice. *Id.* at 12. AML responds that the Asserted Patent's claims are directed at unconventional, concrete steps that create a method that was unavailable before this patent to solve a problem specific to e-commerce by allowing a customer to purchase from a vendor without registering with that select vendor. ECF No. 23 at 5, 7–8.

Penney OpCo next argues that the Asserted Patent applies the desired concept in a generic technological environment, disqualifying the patent from eligibility. ECF No. 17 at 17–19. AML counters that this argument oversimplifies the claims, ignoring the overall purpose and instead focusing on the individual claims to frame the Asserted Patent as abstract and uninventive. ECF No. 23 at 9–10, 13–15. AML additionally argues the Asserted Patent is directed to an inventive concept that confers eligibility under *Alice*. *Id.* at 15–19.

This Court typically reserves its ruling on patent eligibility for a later stage of litigation. Penney OpCo filed its motion prior to claim construction and the close of discovery. But Penney OpCo asks the Court to resolve the issue now, contending that there are no claim construction issues or factual disputes impeding the Court's analysis. ECF No. 17 at 20. AML has not asked the Court to put off an eligibility determination, but it has also not assured the Court that the issue is ripe for adjudication: free of claim construction and factual disputes. *See* ECF No. 23. To the contrary, the Court notes a disagreement as to claim 1's purpose and functionality. *Compare* ECF No. 17 at 1–2, *with* ECF No. 23 at 5–10. There is also considerable dispute over whether Penney OpCo rebutted all factual allegations in AML's complaint. *Compare* ECF No. 17 at 20, *with* ECF No. 23 at 16–17. Because of these disputes, Penney OpCo has not met its burden in showing that

the Asserted Patent is invalid to overcome the natural presumption that it is valid, and there is no reason to disregard AML's assertions of validity.

Because an issued patent enjoys the presumption of validity, which requires clear and convincing evidence to prove otherwise, and claim construction and fact discovery may bear on the Court's § 101 analysis, the Court believes that delaying the determination of a patent's § 101 eligibility is the wisest course of action. Therefore, Penney OpCo's motion to dismiss for failure to state a claim is **DENIED**.

This order does not preclude Penney OpCo from re-filing its § 101 motion, if it chooses, after the Court issues a claim construction order. Should Penney OpCo elect to re-file its motion at that time, the Court orders it to brief the patent ineligibility of each asserted claim—not just representative claims.

## IV. CONCLUSION

Accordingly, the Court finds that this District is a proper venue for this matter and reserves the issue of the eligibility of the Asserted Patent for a later time. It is therefore **ORDERED** that Defendant Penney OpCo LLC's Motion to Dismiss (ECF No. 17) is **DENIED**.

**SIGNED** this 18th day of October, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE